# EXHIBIT 1

Robert Gitelman (NJ # 039192004)
**NAPOLI SHKOLNIK PLLC**
400 Broadhollow Road – Suite 305
Melville NY 11747-4810
Tel. (212) 397-1000
rgitelman@napolilaw.com

and

Christopher M. Placitella (NJ # 027781981)
Michael Cohen (NJ # 024871979)
Eric S. Pasternack (NJ # 015132011)
Jared M. Placitella (NJ # 068272013)
Drew M. Renzi (NJ # 0442262023)
**COHEN, PLACITELLA & ROTH, P.C.**
127 Maple Avenue
Red Bank NJ 07701-1759
Tel. (732) 747-9003
cplacitella@cprlaw.com
mcoren@cprlaw.com
epasternack@cprlaw.com
jmplacitella@cprlaw.com
drenzi@cprlaw.com

*Attorneys for Plaintiffs and the Putative Class*

| |
|---|
| **BRENDA MOTLEY;** <br> **TERESA LIRIANO;** <br> **DIANA VALDES;** *and* <br> **ANGELA SANTIAGO, individually and on** <br> **behalf of all others similarly situated,** <br><br> Plaintiffs, <br><br> v. <br><br> **COSMED GROUP, INC.,** f/k/a COSMED <br> MEDICAL STERILIZATION, INC. <br> f/k/a ETO STERILIZATION, INC., <br> f/k/a HAZEL ENTERPRISES, INC.; <br> **C.H.S. PROPERTY DEVELOPMENT LLC,** <br> f/k/a J.S. PROPERTY RENEWEL <br> CO. L.P.; <br> **JS URBAN RENEWAL CORP.;** *and* <br> **JOHN DOE DEFENDANTS 1-25** <br> (fictitious names describing presently <br> unidentified entities), <br><br> Defendants. |

**SUPERIOR COURT OF NEW JERSEY**

Union County – Law Division

Civil Part

Docket No: UNN-L-002802-24

A TRUE COPY ATTEST
DAVID D. AYLES, PROCESS SERVER
AND DISINTERESTED PERSON

**CIVIL ACTION**

**<u>SUMMONS</u>**

The State of New Jersey, to the Above-Named Defendant(s):

## COSMED GROUP, INC.

**The Plaintiffs,** named above, have filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the County listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice complex, CN—971, Trenton, NJ 08625. A $135.00 filing fee payable to the Clerk of the Superior Court and a completed Case Information Statement (available from the deputy clerk if the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to Plaintiffs' attorney whose name and address appear above, or to Plaintiffs, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief Plaintiffs demand, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

Dated: August 7, 2024

/s/ Michelle M. Smith
MICHELLE M. SMITH
Clerk of the Superior Court

*Name/Address of Defendant to be served:*

**Cosmed Group, Inc.**
**2500 Brunswick Avenue**
**Linden NJ  07036**

**ATLANTIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Fl.
Atlantic City, NJ 08401
LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk of the Superior Court
Case Processing Section, Room 119
Justice Center, 10 Main Street
Hackensack, NJ 07601-0769
LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First F., Courts Facility
49 Rancocas Road
Mt. Holly, NJ 08060
LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(609) 261-1088

**CAMDEN COUNTY:**
Deputy Clerk of the superior Court
Civil Processing Office
1st Fl., Hall of Records
101 S. Fifth Street
Camden, NJ 08103
LAWYER REFERRAL
(856) 964-4520
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
9 N. Main Street
Box DN-209
Cape May Court House, NJ 08210
LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Broad & Fayette Sts. P.O. Box 615
Bridgeton, NJ 08302
LAWYER REFERRAL
(856) 692-6207
LEGAL SERVICES
(856) 451-0003

**ESSEX COUNTY:**
Deputy Clerk of the Superior Court
50 West Market Street
Room 131
Newark, NJ 07102
LAWYER REFERRAL
(973) 622-6207
LEGAL SERVICES
(973) 624-4500

**GLOUCESTER COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake
First Fl., Court House
1 North Broad Street, P.O. Box 129
Woodbury, NJ 08096
LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

**HUDSON COUNTY:**
Deputy Clerk of the Superior Court
Superior Court, Civil Records Dept.
Brennan Court House - 1st Floor
Administration Building
583 Newark Avenue
Jersey City, NJ 07306
LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08862
LAWYER REFERRAL
(908) 735-2611
LEGAL SERVICES
(908) 782-7979

**MERCER COUNTY:**
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 South Broad Street, P.O. Box 8068
Trenton, NJ 08650
LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY:**
Deputy Clerk of the Superior Court
Administration Building
Third Floor
56 Paterson Street, P.O. Box 2633
New Brunswick, NJ 08903-2633
LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

**MONMOUTH COUNTY:**
Deputy Clerk of the Superior Court
71 Monument Park
P.O. Box 1262
Court House, East Wing
Freehold, NJ 07728-1262
LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

**MORRIS COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
30 Schuyler Pl., P.O. Box 910
Morristown, NJ 07960-0910
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

**OCEAN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
Court House, Room 119
118 Washington Street
Toms River, NJ 08754
LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

**PASSAIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton Street
Paterson, NJ 07505
LAWYER REFERRAL
(973) 278-9223
LEGAL SERVICES
(973) 345-7171

**SALEM COUNTY:**
Deputy Clerk of the Superior Court
92 Market Street, P.O. Box 18
Salem, NJ 08079
LAWYER REFERRAL
(856) 935-5628
LEGAL SERVICES
(856) 451-0003

**SOMERSET COUNTY:**
Deputy Clerk of the Superior Court
Civil Division office
New Court House, 3rd Fl.
P.O. Box 3000
Somerville, NJ 08876
LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY:**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 383-7400

**UNION COUNTY:**
Deputy Clerk of the Superior Court
1st Fl., Court House
2 Broad Street
Elizabeth, NJ 07207-6073
LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

**WARREN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
Court House, 413 Second Street
Belvidere, NJ 07823-1500
LAWYER SERVICE
(973) 267-5882
LEGAL SERVICES
(973) 475-2010

Robert Gitelman (NJ # 039192004)
**NAPOLI SHKOLNIK PLLC**
400 Broadhollow Road – Suite 305
Melville NY  11747-4810
Tel. (212) 397-1000
rgitelman@napolilaw.com

     and

Christopher M. Placitella (NJ # 027781981)
Michael Cohen (NJ # 024871979)
Eric S. Pasternack (NJ # 015132011)
Jared M. Placitella (NJ # 068272013)
Drew M. Renzi (NJ # 0442262023)
**COHEN, PLACITELLA & ROTH, P.C.**
127 Maple Avenue
Red Bank NJ  07701-1759
Tel. (732) 747-9003
cplacitella@cprlaw.com
mcoren@cprlaw.com
epasternack@cprlaw.com
jmplacitella@cprlaw.com
drenzi@cprlaw.com

*Attorneys for Plaintiffs and the Putative Class*

**SUPERIOR COURT OF NEW JERSEY**

Union County – Law Division

Civil Part

Docket No: _____

---

**BRENDA MOTLEY;**
**TERESA LIRIANO;**
**DIANA VALDES;  *and***
**ANGELA SANTIAGO, individually and on**
    **behalf of all others similarly situated,**

      Plaintiffs,

        v.

**COSMED GROUP, INC., f/k/a COSMED**
    **MEDICAL STERILIZATION, INC.**
    **f/k/a ETO STERILIZATION, INC.,**
    **f/k/a HAZEL ENTERPRISES, INC.;**
**C.H.S. PROPERTY DEVELOPMENT LLC,**
    **f/k/a J.S. PROPERTY RENEWEL**
    **CO. L.P.;**
**JS URBAN RENEWAL CORP.;  *and***
**JOHN DOE DEFENDANTS 1-25**
    (fictitious names describing presently
    unidentified entities),

      Defendants.

**CLASS ACTION COMPLAINT**
**AND JURY TRIAL DEMANDED**

Plaintiffs, Brenda Motley; Teresa Liriano; Diana Valdes; and Angela Santiago, individually and on behalf of all others similarly situated, ("Class Members") against Defendants, Cosmed Group, Inc., f/k/a Cosmed Medical Sterilization, Inc. f/k/a ETO Sterilization, Inc., f/k/a Hazel Enterprises, Inc.; C.H.S. Property Development LLC, f/k/a J.S. Property Renewal Co. L.P.; and JS Urban Renewal Corp. ("Defendants") allege as follows:

## NATURE OF THE ACTION

1.      Ethylene Oxide ("EtO"), a globally recognized human carcinogen for decades, has been silently permeating in the air of certain American communities, primarily being emitted from medical sterilization sites and chemical plants producing everyday items like antifreeze. This insidious chemical, officially deemed cancer-causing by authorities like the Environmental Protection Agency ("EPA"), National Toxicology Program, and the International Association of Research on Cancer, is alarmingly prevalent in the air in Linden, New Jersey, where the toxin is continuously released from sterilization facilities and impacts the population, including many children. Recent investigations reveal a disturbing pattern: communities suffering the most from exposure to toxic EtO emissions in America are at or below the federal poverty line. These communities, already vulnerable, bear the brunt of the health hazards from a pollutant they have little to no role in producing and are often kept in the dark about the greatest health threat lurking in their air.

2.      The EPA recognizes EtO as both a hazardous substance and a hazardous material under the Clean Air Act (CAA) , the Resource Conservation and Recovery Act  (RCRA) and  the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). 40 CFR part 302.4 (Table 304.2)

3.      Health implications of continuous EtO exposure are dire and far-reaching, encompassing a range of cancers—including breast, blood, stomach, leukemia, lymphoma, pancreatic, and brain, as well as reproductive problems and miscarriages. For children, who are more vulnerable to the impacts of EtO, the stakes are even higher, with EtO exposure increasing the risk of severe DNA mutations. Even short-term exposure to this toxin can initiate a slew of symptoms like respiratory issues, nausea, headaches, fatigue, and neurological disorders. Plaintiffs seek injury compensation as well as medical monitoring costs for being affected by EtO exposure within a five-mile radius of the Defendant Cosmed Group, Inc.'s sterilization facility at 2500 Brunswick Avenue, Linden, New Jersey (hereinafter "the Linden Facility") from the date of first EtO exposure. The Linden Facility is owned by the Defendant C.H.S. Property Development LLC, where Defendant Cosmed Group, Inc. currently operates and does business. Upon information and belief, the Linden Facility was previously owned and/or operated by the Defendants, ETO Sterilization Inc.; Hazel Enterprises, Inc.; J.S. Property Renewal Co. L.P.; and JS Urban Renewal Corp.

4.      This class action lawsuit is a direct response to the harm and suffering endured by the plaintiffs, traced back to the negligent handling of EtO at the Linden Facility. Through their reckless practices and by acting in concert, Defendants have unleashed a deadly and ever-present series of plumes of EtO across Linden, New Jersey for decades, poisoning the air and causing marginalized communities, once again, to suffer disproportionately from environmental contamination. Plaintiffs and other similarly situated to them consequently have been exposed to hazardous EtO at greater than normal background levels and thereby have sustained an already manifested diseases caused by the exposure and/or have been placed into a significantly increased risk of contracting a serious latent disease from the exposure.

5.      Of particular concern, and one of the fundamental reasons for the herein requested medical monitoring class, is the high likelihood of latent disease developing decades from now for the people—particularly children—who have been inescapably exposed to this deadly toxin daily due to Defendants' actions and omissions. Thankfully, we have the capacity with modern healthcare to regularly scan for, monitor, and track disease progression—preventing readily avoidable deaths through early detection and treatment. The ongoing EtO contamination crisis in Linden, New Jersey necessitates this modern solution in the interests of the fair administration of justice and to meet the coequal goals of damages consistent with the common law tradition—to compensate and deter. Anything less would succumb the state of public health in these communities to this fate: many thousands of Linden residents, including children, will die avoidable deaths from diseases that could have been detected earlier and treated safely—diseases that are caused by EtO emissions resulting from the Defendants' actions.

## INTRODUCTION

6.      EtO was first listed in the National Toxicology Program, Department of Health and Human Services' *Fourth Annual Report on Carcinogens* in 1985 as reasonably anticipated to be a human carcinogen based on limited evidence of carcinogenicity from studies in humans and sufficient evidence of carcinogenicity from studies in experimental animals. The listing was revised to "*known to be a human carcinogen*" in the *Ninth Report on Carcinogens* in 2000.[1]

7.      Notwithstanding their knowledge of this ultrahazardous toxicology, Defendants disregarded EtO's harmful properties as an environmental toxin, resulting in dangerous volumes of EtO being released into the communities surrounding the Linden Facility.

---

[1] *National Toxicology Program, Department of Health and Human Services*, Fifteenth Edition. "EtO." Page 1, https://ntp.niehs.nih.gov/sites/default/files/ntp/roc/content/profiles/ethyleneoxide.pdf.

8.      For decades, Defendants has been emitting substantial quantities of EtO into the air supply of a sizeable population in New Jersey. As a result, those who lived, worked, prayed, and attended school in the surrounding area of the Linden Facility unknowingly have been inhaling EtO in the air they breathe on a routine basis.

9.      Defendants never informed the residents of Linden, New Jersey or those who attend school, live, pray, or work nearby that they systematically emit EtO into the air, nor did Defendants warn these residents that they routinely and continuously breathe in a known human carcinogen.

10.     Through its industrial processes, Defendants emit EtO into the air, allowing it to be carried by the wind and natural air movement throughout the area surrounding the Linden Facility. As such, residents in the area have unknowingly been exposed to carcinogenic EtO for decades—some at levels 600 times the national average cancer risk.

11.     At all relevant times, the Defendants knew, or should have known, that EtO is dangerous, toxic, carcinogenic, mutagenic, and causes various illnesses. There is no known safe level of EtO exposure; its carcinogenic and DNA-damaging effects have been widely studied and known since the 1940s and definitively known to Defendants since at least 1985. Notwithstanding, Defendants chose to operate their businesses in a way such that EtO is emitted in a densely populated area full of children, houses, parks, schools, and businesses.

12.     On September 14, 2022, the EPA conducted a community meeting advising persons living or working in or around the Linden facility of the potential exposer to EtO emissions. The EPA reported at that time that the air near the Linden Facility did not exceed the short-term health benchmarks.

13.     On February 7, 2023, the Union of Concerned Scientists published an intensive report ("USC report") on the exposure of EtO to communities in Linden, New Jersey.

14.     The Union of Concerned Scientists found that the maximum cancer risk levels from facility specific EtO emissions of 2,000 cases per 1 million people. The Linden Facility is situated within five miles of nearly 387,000 people and 350 schools and childcare centers. The community around the Linden Facility has a high percentage of people of color, people of low income and people with limited English Language proficiency.

15.     On January 29, 2024, Defendant Cosmed published a blog on its website stating the third stage of its sterilization process reduced EtO concentrations to or below permissible levels.

16.     On March 14, 2024, the EPA announced final amendments to the National Emissions Standards for Hazardous Air Pollutants for Ethyl Oxid Commercial Sterilizers and said the new standards will reduce the emissions from commercial sterilization facilities to the outside air by 90% and reduce the estimate cancer deaths from 8,000 in 1 million to 100 in 1 million.

17.     In June 2024, the EPA conducted a community meeting in Linden New Jersey advising the people living and working in and around the Linden Facility of the new emissions standards and the comparable health risks to which they had been exposed under old standards relative to their exposure under the new significantly lower emission standards.


## THE PARTIES

18.     Plaintiff Brenda Motley is a natural person and a resident of the State of New Jersey.

19.     Plaintiff Teresa Liriano is a natural person and a resident of the State of New Jersey.

20.     Plaintiff Diana Valdes is a natural person and is a resident of the State of New Jersey.

21.     Plaintiff Angela Santiago is a natural person and is a resident of the State of New Jersey.

22.     Defendant Cosmed Group, Inc. is a Delaware Corporation organized and existing under the laws of Delaware with a principal place of business located at 2500 Brunswick Avenue, Linden NJ 07036. It is headquartered at 28 Narragansett Avenue, Jamestown RI 02835 and is subject to service of process via its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 North Orange Street, Wilmington DE 19801.

23.     Cosmed Sterilization Inc. was a Maryland Corporation which, upon information and belief, changed its name to Cosmed Group, Inc. on or about January 24, 1995.

24.     ETO Sterilization, Inc. was a New Jersey Corporation which was upon information and belief merged into Cosmed Group, Inc. on or about January 17, 1995.

25.     Upon information and belief, the Defendant Cosmed Medical Sterilization, Inc. was a Rhode Island Corporation which, upon information and belief, merged into Cosmed Group, Inc. on or about January 25, 1995. Upon information and belief there is common ownership of Cosmed Medical Sterilization, Inc. and Cosmed Group, Inc. and Dr. Michael Howe is the president of both corporations.

26.     Hazel Enterprises, Inc. was a New Jersey Corporation which, upon information and belief, merged into Cosmed Group, Inc. on or about January 20, 1995.

27.     The Defendant C.H.S. Property Development LLC is a New Jersey Limited Liability Company and is subject to service of process via its registered agent, Clifford Slavin, 38 Wheatley Road, Old Westbury NY 11568.

28.     J.S. Property Renewal Co. L.P. was a New Jersey Limited Partnership and was merged into C.H.S. Property Development LLC on or about May 17, 2017.

29.     The Defendant JS Urban Renewal Corp. is a New Jersey Corporation and is subject to service of process via its registered agent, Clifford Slavin, 38 Wheatley Road, Old Westbury NY 11568.

30.     John Doe Defendants 1-25 are fictitiously named defendants that are unidentified persons and/or entities whose names, despite reasonable diligence and investigation, are presently unknown and whose acts, omissions, failures and conduct may have caused and/or contributed to the subject incidents and events in this matter.

31.     At all times material hereto, the John Doe Defendants were engaged in the business of manufacturing, producing, fabricating, marketing, selling and/or distributing ethylene oxide, the sale or distribution of the ethylene oxide present at and released from the facility at 2500 Brunswick Avenue, Linden NJ 07036.

### JURISDICTION AND VENUE

32.     This Court has jurisdiction over the Defendants because they own, owned, operate and/or operated a sterilization plant in New Jersey at 2500 Brunswick Avenue, Linden New Jersey and have emitted pollution into the environment of New Jersey and injured the citizens and residents of New Jersey.

33.     Venue is proper pursuant to R. 4:3-2(a)(3) and R. 4:3-2(b) because Plaintiffs' claims arose in Union County, New Jersey.

### FACTS

34.     The Defendants Cosmed Group, Inc.; ETO Sterilization, Inc.; Cosmed Sterilization, Inc.; Cosmed Medical Sterilization, Inc.; and Hazel Enterprises are hereinafter jointly referred to as the Cosmed Defendants.

35.     At all times material herein, each Defendant acted by and through its actual, apparent or ostensible agents, servants, employees, workers, subsidiaries, affiliates (including one or more co-Defendant), and others upon which they may be found vicariously liable, any and all of which or who, were acting at the time within the course and scope of their agency, duties, undertakings and authority, actual, apparent or ostensible. Alternatively, each Defendant is or may

be liable for the tortious acts, omissions and activities of a co-Defendant set forth herein as an alter ego of such Defendant or as a constituent member or part of a enterprise as the facts may establish.

36.    The Cosmed Defendants operate the food sterilization facilities in Linden, New Jersey and have been operating the Linden Facility since, if not prior to, 1986.

37.    Defendant C.H.S. Property Development LLC owns the real property on which the Linden Facility is located.

38.    Upon information and belief, the Defendants J.S. Property Renewal Co. LP. and JS Urban Renewal Corp. previously owned the real property on which the Linden Facility is located. The Defendants C.H.S. Property Development LLC; J.S. Property Renewal Co. LP.; and JS Urban Renewal Corp. are hereinafter jointly referred to as the Landlord Defendants.

## COMMON FACTUAL ALLEGATIONS

39.    The Landlord Defendants are directly liable by virtue of their own conduct for the wrongful acts detailed herein.

40.    At all times material herein, each Defendant acted by and through its actual, apparent or ostensible agents, servants, employees, workers, subsidiaries, affiliates (including one or more co-Defendant), and others upon which they may be found vicariously liable, any and all of which or who, were acting at the time within the course and scope of their agency, duties, undertakings and authority, actual, apparent or ostensible. Alternatively, each Defendant is or may be liable for the tortious acts, omissions and activities of a co-defendant set forth herein as an alter ego of such Defendant or as a constituent member or part of an enterprise as the facts may establish.

41.    Plaintiffs have each resided, worked, or attended school within approximately five miles or less from the Defendants' Linden Facility for a significant amount of time while Defendants were emitting unsafe and hazardous levels of EtO into the air.

42.     Toxic chemicals and fumes released by Defendants was ongoing upon Plaintiffs' properties and persons throughout the duration of Plaintiffs' residence at Plaintiffs' properties.

43.     At the time of the purchase or lease of Plaintiffs' properties, and/or the time that Plaintiffs attended work or school, Plaintiffs were unaware that they were being subjected to dangerous levels of EtO, nor could Plaintiffs have known the extent of the EtO emissions coming from the Linden Facility.

44.     EtO is an odorless and colorless flammable gas at room temperature that is produced in large volumes for industrial uses.

45.     Commercial/industrial food product sterilizers use EtO in their sterilization processes.

46.     The EtO sterilization process generally begins by placing food products in a gas chamber. After air is pumped out of the chamber, EtO is introduced and allowed to diffuse into the food products for several hours. Once the food products are sterilized, the EtO is pumped out of the chamber, and the remaining EtO is supposed to be allowed to slowly dissipate.

47.     Through their industrial processes, the Defendants emitted EtO into the air, allowing it to be carried by the wind and natural air movement throughout the area surrounding the facilities. As such, residents' properties in the area have unknowingly been exposed to carcinogenic EtO for decades.

48.     EtO is highly reactive, readily taken up by the lungs, efficiently absorbed into the blood stream, and easily distributed throughout the human body.

49.     At all relevant times, the Defendants knew, or should have known, that EtO is dangerous, toxic, carcinogenic, mutagenic, and causes various illnesses. There is no known safe level of cumulative EtO exposure; its carcinogenic and DNA-damaging effects have been widely studied and known since the 1940s and definitively known to Defendants since at least 1985.

Furthermore, in 2016, the EPA presented new data revealing that the EPA determined EtO increased the risk of cancer 60 times what was previously thought.

50.     Notwithstanding, for decades, Defendants chose to operate their businesses such that the supply chain culminates in the emission of EtO in densely populated areas full of children, houses, parks, schools, and businesses, significantly increasing the risk of these Linden New Jersey residents and those in surrounding areas contracting a serious disease.

51.     Further, although technologies to control EtO have been available and widely used since the 1980s, Defendants operated the Linden Facility without using the best practices and control technologies available to reduce its EtO emissions.

52.     As sophisticated corporations and long-term users, transporters, and emitters of EtO, Defendants had superior knowledge and access to information regarding the dangers of EtO, more so than the general public or Plaintiffs.

53.     While the harmful properties of EtO are not widely known to an average person who is not involved in the business of EtO sterilization, the harmful properties of EtO have been known—or should have been known—to Defendants and anyone in the business of using and emitting EtO as part of a sterilization process, for decades. By way of example:

a.   In a 1977 article, the National Institute of Occupational Safety and Health ("NIOSH") concluded that occupational exposure to EtO may increase the frequency of genetic mutations in humans. The NIOSH report also raised concerns about the potential carcinogenicity of EtO.

b.   In 1981, NIOSH released a subsequent report which recommended that EtO be regarded in the workplace as a potential occupational carcinogen. NIOSH based its recommendation on new evidence of EtO's carcinogenic, mutagenic, and reproductive hazards, including studies demonstrating that EtO induced cancer in experimental

animals. Specifically, the studies showed an increase in instances of leukemia in line with increases of EtO concentrations, in addition to other adverse effects on reproductive health. An epidemiological investigation of Swedish workers exposed to EtO also revealed increased incidences of leukemia and other cancers.

c.  In 1985, the U.S. Department of Health and Human Services published the Fourth Annual Report on Carcinogens and classified EtO as reasonably anticipated to be a human carcinogen.

d.  In the early 1990s, NIOSH published the largest and most informative epidemiological study of EtO. The study analyzed over 18,000 employees working with EtO at fourteen different industrial facilities sterilizing medical equipment and food spices. The study found sufficient evidence to support a causal link between exposure to EtO and increased mortality from lymphatic and hematopoietic cancers. Follow-up studies have additionally demonstrated an association between EtO exposure and breast cancer.

e.  In 1994, as a result of these findings, the World Health Organization ("WHO") listed EtO as a Group 1 human carcinogen—the agency's highest risk classification—finding EtO to be carcinogenic to humans.

f.  In 2000, following suit, the U.S. Department of Health and Human Services reclassified EtO to "known to be a human carcinogen."

g.  The U.S. Department of Labor's Occupational Safety and Health Administration's (hereinafter "OSHA") 2002 fact sheet on EtO indicates that "[b]oth human and animal

studies show that EtO is a carcinogen" and requires employers to provide clear signs and labels notifying workers of EtO's "carcinogenic and reproductive hazards."[2]

h.  In 2016, the EPA's Integrated Risk Information System similarly reclassified EtO as carcinogenic to humans and increased—by a multiple of 30 in adults and 60 in children—its estimate of EtO's cancer potency. [3]

54.    EtO exposure affects the most vulnerable members of the population. The EPA states that "for a single year of exposure to EtO, the cancer risk is greater for children than for adults. That is because EtO can damage DNA."

55.    Despite knowing these risks, Defendants' EtO sterilization process did not comply with safe and prudent methods of EtO sterilization.

56.    At all relevant times, Defendants—by way of failure to implement control measures to limit emissions, failure to upgrade sterilization equipment, intentional shortening of EtO de-gassing/aeration/quarantining time, and/or other unsafe practices—subjected Plaintiffs and the Linden, New Jersey community, as well as individuals in surrounding areas, to unhealthy and dangerous levels of EtO in order to increase profits and/or cut costs.[4]

57.    At all relevant times, Defendants failed to train its employees and managers, resulting in unsafe practices which created risky EtO sterilization practices with the goal of saving money.

---

[2] See, Occupational Safety and Health Administration (OSHA), *OSHA Fact Sheet: Ethylene Oxide*, https://www.osha.gov/OshDoc/data_General_Facts/ethylene-oxide-factsheet.pdf, (last accessed: February 9, 2024).

[3] Max Blau and Lylla Younes, *The Dirty Secret of America's Clean Dishes*, ProPublica (Dec. 20, 2021) https://www.propublica.org/article/the-dirty-secret-of-americas-clean-dishes, (last accessed: February 9, 2024).

[4] See EPA, *Final Amendments to Air Toxics Standards for Ethylene Oxide Commercial Sterilization Facilities*, https://www.epa.gov/system/files/documents/2024-03/factsheet_etosterilizers_final_3-14-24.pdf. (last accessed: August 2, 2024).

58.     Defendants had knowledge of faulty/ineffective training systems, faulty/ineffective supervision, and employees' unfitness to perform their jobs safely.

59.     On August 22, 2018, the U.S. EPA released the 2014 National Air Toxic Assessment ("NATA")—a screening tool that estimates cancer risks based on emission data in 76,727 census tracts across the United States. The 2014 NATA revealed 109 census tracts in the United States with cancer-risk scores greater than 100 cases per one million people exposed to toxic air pollution during their lifetime, more than what the U.S. EPA considers "acceptable" limits.

60.     Exposure to EtO has been widely studied, and its negative health effects are well documented. Presently, there is evidence linking exposure to increased risk of lymphohematopoietic cancer such as non-Hodgkin's lymphoma, multiple myeloma, and lymphocytic leukemia; breast cancer; tumors in the lungs, uterus, and the brain; and reproductive and developmental impairments including increased rate of miscarriages and infertility.

61.     Commercial food product sterilizers use the EtO sterilization process on over 20 billion healthcare products annually in the United States. The EtO sterilization process begins by placing medical equipment in a gas chamber. After air is pumped out of the chamber, EtO is injected and allowed to diffuse into the products for several hours. Once the medical equipment is sterilized, the EtO is pumped out of the chamber and the remaining EtO is allowed to slowly dissipate. Each time this sterilization cycle is run, EtO is emitted—whether through controlled or uncontrolled emissions known as "fugitive emissions"—into the air and inhaled by the surrounding community.

62.     EPA regulations currently do not require fugitive emissions to be reported, so tracked emission figures do not accurately account for these fugitive emissions, which include

untracked ventilation due to lack of maintenance, faulty design, and other untracked escape pathways for this highly explosive air toxin.

63.     EtO is extremely flammable and explosive in its room-temperature gaseous form—therefore, it is typically handled and shipped as a refrigerated liquid to mitigate those risks.

64.     In fact, EtO is so explosive that it is one of the main components in thermobaric and "fuel-air explosive" weapons used by the US military, sometimes referred to as "vacuum bombs." These bombs often produce an atomic-mushroom-like smoke signature and blast characteristics that look like "mini-nukes." They are among the most powerful nonnuclear weapons in our country's arsenal. EtO is a preferred compound for such military uses because it has a shock wave effectiveness of 5:1 compared to dynamite—in other words, to duplicate the shock wave of 5 pounds of dynamite, you need just 1 pound of EtO.[5]

65.     In addition to EtO's explosive quality, it is also odorless, unless one is to inhale very concentrated amounts, (likely only possible in occupational exposure scenarios). Other industries that handle chemicals with these characteristics—such as the liquified petroleum gas industry—combine an additive with its products to alert users and other nearby individuals of leaks. Such measures have proven to be effective in alerting propane users to a problem - and giving them the time they need to ensure their safety. Upon information and belief, Defendants have instituted no such readily available safety precautions with EtO.

66.     In manufacturing, distributing, and using EtO, Defendants have neglected to add any odorous substances to EtO to alert employees and residents in the neighborhoods of the Linden facilities that EtO is endangering them.

---

[5] Meyer R, Köhler, J., Homberg A. *Explosives. 6th ed.* Weinheim, Germany: Pg. 142.

67.     As such, local residents, students, and workers in the areas of these facilities have unknowingly been subjected to and breathed in EtO emissions for decades. All the while, the Linden Facility emitted EtO, and Defendants knew, or should have known, that EtO is dangerous, toxic, carcinogenic, mutagenic, and the cause of various illnesses.

68.     Exposure to toxic chemicals may cause latent yet substantial injury, which should be compensated, even if the full effect of the exposure is not immediately apparent.

69.     Named Plaintiffs and all putative Class Members suffered appreciable harm as a result of inhaling air poisoned with Defendants' dangerously high EtO emissions.

70.     Medical monitoring is necessary to detect the potential onset of a serious illness or disease due to physiological changes that indicate a substantial increase in risk of harm from exposure to EtO.

71.     Therefore, as a result of this harm, it is reasonably necessary for Plaintiffs to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of their EtO exposure.

72.     Monitoring procedures exist in the contemporary medical field—specific to EtO exposure—that make possible the early detection of cancer, the disease progression of cancer, and the presence of biomarker abnormalities that indicate the development of cancer.

73.     Conversely, when cancer care is delayed or inaccessible there is a lower chance of survival, greater problems associated with treatment, and higher costs of care.

74.     Therefore, preventative diagnostic tests for the early detection of signs or symptoms of latent cancers are medically necessary to assure early diagnosis and effective treatment, mitigating the risk of harm of these serious diseases. In other words, early detection increases the chances of survival.

75.     It is inequitable to place the economic burden of such care on the unwittingly exposed plaintiffs/class member rather than on the liable Defendants.

76.     Having been harmed by regularly breathing in Defendants' elevated levels of EtO, Plaintiffs and putative Class Members seek as damages the costs of such diagnostic testing and medical monitoring, in order to detect the early onset of diseases. This testing will, in turn, identify the need for treatment, management, and rehabilitation in the event cancer is detected and Plaintiffs and/or any Class Members are diagnosed.

## **FACTS SPECIFIC TO PLAINTIFFS**

77.     Plaintiff Brenda Motley is a resident of 1126 Debra Drive, Linden NJ and has lived at her residence approximately three (3) miles from the Linden Facility since 2017. She has lived in two other residences less than two miles from the Linden Facility since 1982. After exposure to EtO she was diagnosed with Leukemia in 1998.

78.     Plaintiff Teresa Liriano is a resident of 96 Sayre Street, Elizabeth NJ and has lived in her current home less than two (2) miles from the Linden Facility from 1988 to 2004 and since 2006. Ms. Liriano lived in another residence less than two (2) miles from the Linden Facility from 2004 to 2006. After exposure to EtO she was diagnosed with Breast Cancer in Maech 2023 and underwent a mastectomy in May 2023.

79.     Plaintiff Diana Valdes is a resident of 241 Ripley Place, Elizabethport NJ and has lived at her current residence less than two (2) miles from the Linden Facility since 2003. Ms. Valdes was diagnosed with non-Hodkins Lymphoma in 2018.

80.     Plaintiff Angela Santiago is a current resident of 340 Changebridge Road, Pine Brook NJ.  Her previous addresses of 26 West 10th Street, Linden NJ and 415 West Grand

Street, Elizabeth NJ, are approximately two (2) miles from the Linden Facility, between the years of 2007 and 2024. After exposure to EtO, she suffered a miscarriage in 2016.

81.     Plaintiffs reside or have resided, frequent or have frequented, work or have worked, and/or attend schools or have attended schools in census tracks exposed to EtO levels that, according to the U.S. EPA, correspond with a cancer risk significantly higher than the national average cancer risk.

82.     Named Plaintiffs, like many other Linden and Elizabeth, New Jersey residents, along with those in the surrounding areas, unknowingly lived with and inhaled Defendants' carcinogenic EtO emissions for years.

83.     Until recently, Named Plaintiffs had no reason to know the specific amount of EtO that Defendants was releasing, nor how dangerous these levels of EtO emissions were—including their association with elevated cancer risks—nor, that EtO was being emitted in its communities at all.

84.     Linden, New Jersey was all included on a "red flag" list of 23 sites by the EPA—indicia of the far higher risk of toxic EtO exposure to Linden and Elizabeth, New Jersey residents than the American population at large.

85.     Furthermore, these numbers do not reflect the cancer risks in these areas over time.

86.     According to the EPA, these risks are models based largely on self-reported emissions data that present a snapshot in time and likely do not accurately capture fugitive emissions data and fail to show the higher risks over the past decades.

87.     High numbers of cancer cases are reported in areas surrounding the Linden Facility.

## CLASS ACTION ALLEGATIONS

88.     Class Definition: Plaintiffs Brenda Motley, Teresa Liriano, Diana Valdes, and Angela Santiago bring this action pursuant to New Jersey Rule 4:32 on behalf of themselves and a Class of similarly situated individuals, defined as follows:

> All individuals who have resided, worked or attended daycare and/or school within a five-mile radius of the Linden Facility 2500 Brunswick Avenue, Linden, New Jersey beginning the date of initial emissions of EtO from the Linden Facility.

Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and its officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

89.     Numerosity: Rule 4:32-1(a)(1). The exact number of Class members is unknown and not available to Plaintiffs at this time, but upon information and belief, nearly over 350,000 individuals fit within the definition of the Class according to 2020 census data. It is, therefore, clear that the members of the Class are so numerous that individual joinder is impracticable.

90.     Commonality: Rule 4:32-1(a)(2); (b)(3). There are many questions of law and fact common to the claims of Plaintiffs and the putative Class members and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to, the following:

a.   Whether Defendants' conduct was negligent;

b.   Whether Defendants owed a duty of care to Plaintiffs and Class Members;

c. Whether the duty of care owed to the Class included the duty to prevent their exposure to unsafe, unnecessary, and high levels of EtO emissions;

d. Whether Defendants breached its duty to the Class by exposing them to high levels of EtO and, thus, increasing their risk of contracting illnesses;

e. Whether medical monitoring and early diagnostic detection is reasonably necessary to protect the Class; and

f. Whether Plaintiffs and putative Class Members are entitled to relief, including through the establishment of a fund to provide for medical monitoring and diagnostic costs.

91.      Typicality: Rule 4:32-1(a)(3). Plaintiffs' claims are typical of the claims of the other members of the Class in that Plaintiffs and the Class Members sustained damages arising out of Defendants' wrongful conduct.

92.      Adequacy of Representation: Rule 4:32-1(a)(4). Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs also have no interests antagonistic to those of the Class and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to the Class.

93.      Superiority of Class Action: Rule 4:32-1(b)(3). Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, as joinder of all members of the Class is impracticable. Individual litigation would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action

presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

94.     Plaintiffs reserve the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

## <u>COUNT I - Negligence</u>
### (Individually and Collectively against Defendants)

95.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

96.     At all times relevant, Defendants owed a duty to Plaintiffs and the Class to exercise reasonable care in the ownership and operation of its facilities, including the emission of EtO.

97.     Notwithstanding their duties, Defendants breached its duty in one or more of the following ways:

a.  Emitting dangerous volumes of EtO into the air from the Linden Facility;

b.  Disregarding safe methods to adequately control EtO emissions from the Linden Facility;

c.  Failing to install, maintain and/or operate adequate control or treatment equipment of EtO emission from the Linden Facility:

d.  Failing to warn or advise those who live, work, or attend school in the community that they were being exposed to EtO;

e.  Failing to reasonably test for and/or adequately record test results of high levels of EtO in Plaintiffs' and the classes' environment;

f.  Ignoring or not acting upon test results showing high levels of EtO;

g.  Underreporting EtO levels; and

h.  Subjecting those who live and work near its facilities to elevated cancer risks.

98.     As a proximate result of Defendants' negligent use and emission of EtO, Plaintiffs and the Class Member have breathed in air contaminated with elevated levels of EtO—amounts that are far higher and more hazardous than acceptable standards, including those set by the U.S. EPA, and Plaintiffs have suffered personal injuries. As a proximate result of Defendants' negligence, the property in which Plaintiffs' own or have a possessory interest have been contaminated and damaged.

99.     This exposure makes it significantly more likely that Plaintiffs and Class Members will develop further injuries, including several types of cancer and other illnesses, including but not limited to, blood cancers, breast cancers, tumors, and reproductive issues. This makes periodic diagnostic medical examinations reasonably necessary. Plaintiffs and Class Members have suffered and will suffer economic losses and expenses associated with ongoing medical monitoring.

100.    Monitoring and diagnostic procedures exist that make early detection of these latent cancers possible and beneficial, facilitating in treatment that will significantly reduce the development of, and health effects associated with, the related cancers.

101.    These monitoring and diagnostic procedures are different than those normally recommended in the absence of exposure to toxic gas such as EtO and are reasonably necessary due to Plaintiffs' and Class Members' significant exposure to EtO.

102.    The available monitoring regime is reasonably necessary according to contemporary scientific principles within the medical community specializing in the diagnosis and treatment of related cancers.

103.    As a result, Plaintiffs and the Class seek a Court-supervised, Defendants-funded medical monitoring program.

## COUNT II - Gross Negligence: Willful and Wanton Misconduct
### (Individually and Collectively against Defendants)

104.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

105.    At all times relevant, Defendants owed a duty to Plaintiffs and the Class Members to exercise reasonable care in the operation of its facilities, including the emission of EtO.

106.    At all times relevant, Defendants owed a duty to refrain from intentional, reckless, malicious, fraudulent, willful, and wanton misconduct and/or conduct which exhibited an indifference and/or conscious disregard to the property, health, safety, and well-being of Plaintiffs and those living and working in the area surrounding the facilities. Defendants intentionally, recklessly, maliciously, and fraudulently caused unsafe EtO to emit from its facilities causing damage to Plaintiffs.

107.    Defendants were motivated by financial profit to intentionally, recklessly, maliciously, fraudulently, willfully, and wantonly expose Plaintiffs to EtO by failing to take proper precautions to prevent the emission of unsafe levels of EtO from these facilities.

108.    The conduct of the Defendants as set forth hereinabove showed intentional, reckless, malicious, and fraudulent misconduct. Accordingly, punitive damages should be imposed against each Defendants to punish and deter each Defendant from repeating or continuing such unlawful conduct.

109.    Notwithstanding their duties, Defendants have been grossly negligent and have breached their duties in one or more of the following ways:

a.    Emitting dangerous volumes of EtO into the air from the Linden Facility;

b.    Disregarding safe methods to adequately control EtO emissions from the Linden Facility;

c.  Failing to install, maintain and/or operate adequate control or treatment equipment of EtO emission from the Linden Facility:

d.  Failing to warn or advise those who live, work, or attend school in the community that they were being exposed to EtO;

e.  Failing to reasonably test for and/or adequately record test results of high levels of EtO in Plaintiffs' and the classes' environment;

f.  Ignoring or not acting upon test results showing high levels of EtO;

g.  Underreporting EtO levels; and

h.  Subjecting those who live and work near its facilities to elevated cancer risks.

110.   As a proximate result of Defendants' grossly negligent use and emission of EtO, Plaintiffs and the Class Member have breathed in air contaminated with elevated levels of EtO— amounts that are far higher and more hazardous than acceptable standards, including those set by the U.S. EPA and Plaintiffs have suffered personal injuries. As a proximate result of Defendants' gross negligence, the property in which Plaintiffs own or have a possessory interest have been contaminated and damaged.

111.   This exposure makes it significantly more likely that Plaintiffs and Class Members will develop further injuries, including several types of cancer and other illnesses, including but not limited to, blood cancers, breast cancers, tumors, and reproductive issues. This makes periodic diagnostic medical examinations reasonably necessary.

112.   Monitoring and diagnostic procedures exist that make early detection of these latent cancers possible and beneficial, facilitating in treatment that will significantly reduce the development of, and health effects associated with, the related cancers.

113.    These monitoring and diagnostic procedures are different than those normally recommended in the absence of exposure to toxic gas such as EtO and are reasonably necessary due to Plaintiffs' and Class Members' significant exposure to EtO.

114.    The available monitoring regime is reasonably necessary according to contemporary scientific principles within the medical community specializing in the diagnosis and treatment of related cancers.

115.    As a result, Plaintiffs and the Class seek a Court-supervised, Defendants-funded medical monitoring program.

### COUNT III -Public Nuisance pursuant to N.J. Stat. § 2C:33-12a
### (Individually and Collectively against Defendants)

116.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

117.    New Jersey law provides:

A person is guilty of maintaining a *nuisance* when:

a. By conduct either unlawful in itself or unreasonable under all the circumstances, he knowingly or recklessly creates or maintains a condition which endangers the safety or health of a considerable number of persons. N.J. Stat. § 2C:33-12a.

118.    Defendants' conduct has caused unreasonable and substantial interference with public health and comfortable enjoyment of life and property, such as by causing EtO to be emitted into the atmosphere.

119.    Defendants' conduct was a substantial factor in causing Plaintiffs and other Class Members to incur medical costs.

120.    By causing the emission of EtO into the atmosphere, Defendants have injuriously affected rights common to the general public, such as the rights of the people to public health,

public safety, public peace, public comfort, and public convenience. The public nuisance caused by Defendants' conduct has caused substantial annoyance, inconvenience, and injury to the public.

121.    The Defendants knew that their acts and/or omissions regarding the release of EtO would have a detrimental effect on the health of the Class.

122.    Wherefore, Plaintiffs and Class Members seek costs for medical monitoring, compensatory, and punitive damages from all Defendants, jointly, severally, and in the alternative.

## COUNT IV - Strict Liability-Design Defect pursuant to N.J. Stat. § 2A:58C-2
### (Individually and Collectively against Defendants)

123.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

124.    New Jersey Law provides:

A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain  In adequate warnings or instructions, or c. was designed in a defective manner. N.J. Stat. § 2A:58C-2.

125.    New Jersey Law further provides:

Under the principle of strict liability, if at the time the seller distributes a product, it is not fit, suitable and safe for  its intended or reasonably foreseeable purposes so that users and others who may be expected to come in contact with the product are injured as a result thereof, then the seller shall be responsible for the ensuing damages. *Santiago v. E.W. Bliss Div., Gulf & Western Mfg. Co.*, 492 A. 2d 1089, 1094-95, 201 N.J. Super. 205, 215 (1985).

126.    Defendants' EtO mixtures and EtO-containing products as described herein constituted an unreasonably and inherently dangerous design of such products in that they contained EtO, a known toxic substance and carcinogen, at the time they left its control.

127.    Defendants' EtO mixtures and EtO-containing products' toxicity, ability to bioaccumulate, inability to be contained, and environmental persistence rendered them defective and unreasonably dangerous at all times.

128.    Defendants' EtO mixtures and EtO-containing products were unsafe as designed and failed to perform safely in a manner that resulted in the injuries of Plaintiffs.

129.    The risk of danger inherent in the design of the Defendants' EtO mixtures and EtO-containing products drastically outweighed any perceived benefits of the design of such products when such products were put to reasonably foreseeable uses.

130.    Alternatively, Defendants knew or should have known that its EtO mixtures and EtO-containing products were unsafe to an extent beyond that which would be contemplated by an ordinary person.

131.    Practical and feasible alternative designs for Defendants' EtO mixtures and EtO containing products capable of reducing Class Members' injuries, damages, and financial losses were commercially available, including mineral oils, silicone fluids, vegetable oils, and nonfluid insulating chemicals, as well as alternative chemical formulations and/or additional chemical processing measures.

132.    The EtO mixtures and EtO-containing products reached the Class Members' lands without any substantial change in condition from when they left the control of the Defendants.

133.    The Defendants' unreasonably dangerous EtO formulas and EtO-containing products caused the permanent presence of EtO in the bodies of Plaintiffs and Class Members and

injury to the public interest, including threats to the physical and economic health and well-being of the Plaintiffs and Class Members.

134.    Plaintiffs and Class Members have suffered, are suffering, and will continue to suffer into the indeterminable future medical costs as a result of Defendants' unreasonably dangerous EtO formulas and EtO-containing products and the presence of EtO within the bodies of Plaintiffs and Class Members.

135.    The Defendants are strictly liable for all damages arising out of its defectively designed EtO formulas, mixtures, and EtO-containing products.

**COUNT V - Strict Liability – Failure to Warn**
**(Individually and Collectively against Defendants)**

136.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

137.    New Jersey Law provides:

Under New Jersey law, manufacturers, as well as all subsequent parties in the chain of distribution, are strictly liable for damages caused by defectively designed products. Employees have been allowed to sue the manufacturers of such machines which have injured them during the course of their employment when those instrumentalities lacked either safety devices or adequate warnings. *Michalko v. Cooke Color & Chemical Corp.*, 91 N.J. 386, 394, 451 A.2d 179, 182-83 (1982).

138.    Defendants' EtO and EtO-containing products were not reasonably safe at the time they left its control because they lacked adequate warnings and/or instructions concerning the dangers and hazards associated with EtO.

139.    At the time the Defendants manufactured, distributed, marketed, promoted, and sold EtO and EtO-containing products, it knew its products were not safe and were likely if not certain to cause toxic EtO contamination of lands in Class Members.

**Page 28 of 34**

140.   Despite the Defendants' knowledge, they failed to provide adequate warnings and/or instructions that its EtO and EtO-containing products were toxic, carcinogenic, and would injure the Class Members' health and livelihood.

141.   The EtO mixtures and EtO-containing products reached the Plaintiffs' and Class Members' lands without any substantial change in condition from when they left the control of the Defendants.

142.   Defendants could have warned of and instructed about these dangers but failed to do so and intentionally concealed information in order to maximize profits for decades.

143.   Defendants continued to conceal the dangers of EtOs after they manufactured, distributed, marketed, promoted, and sold EtOs and EtO-containing products.

144.   The absence of adequate warnings made the product inherently dangerous.

145.   Defendants are strictly liable for all damages to the Class arising out of its failure to provide adequate warnings and instructions regarding its unreasonably dangerous EtOs and EtO-containing products.

146.   The Defendants' unreasonably dangerous EtO formulas and EtO-containing products caused the permanent presence of EtO in Plaintiffs and putative Class Members and injury to the public interest, including threats to the physical and economic health and well-being of the Plaintiffs and Class Members.

147.   Plaintiffs and putative Class Members have suffered, are suffering, and will continue to suffer into the indeterminable future medical costs as a result of defendants' unreasonably dangerous EtO formulas and EtO-containing products and the presence of EtOs within the bodies of Plaintiffs and Class Members.

148.    The Defendants are strictly liable for all damages arising out of its defectively designed EtO formulas, mixtures, and EtO-containing products.

## COUNT VI - Private Nuisance pursuant to N.J. Stat. § 2C:33-12a
### (Individually and Collectively against all Defendants)

149.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

150.    New Jersey law provides:

A person is guilty of maintaining a *nuisance* when:

a. By conduct either unlawful in itself or unreasonable under all the circumstances, he knowingly or recklessly creates or maintains a condition which endangers the safety or health of a considerable number of persons. N.J. Stat. § 2C:33-12a.

151.    Defendants' conduct has caused unreasonable and substantial interference with the Plaintiffs and Class Members' lives and comfortable enjoyment of its lives and properties, causing substantial health impacts to the class, costs which have been unreasonably borne by the Plaintiffs and Class Members who suffered, and continue to suffer, losses by having to pay the cost to abate these risks to their health.

152.    Defendants' conduct was a substantial factor in causing Plaintiffs and Class Members to have to pay these costs and damages.

153.    Wherefore, Plaintiffs and Class Members seek compensatory and punitive damages from all Defendants, jointly, severally, and in the alternative.

## COUNT VII - Restitution – Unjust Enrichment
### (Individually and Collectively against all Defendants)

154.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

155.    Defendants have avoided liability for these costs.

156.   In equity and fairness, it is the Defendants, not the Plaintiffs and Class Members, who should bear the costs of healthcare for the Plaintiffs and Class Members. As a result, the Defendants have been unjustly enriched to the extent that the Plaintiffs and Class Members have had to pay these costs.

157.   As a result of the Defendants' acts and omissions specified herein, the Plaintiffs and Class Members were forced to spend far more on actual healthcare costs to identify and remedy their medical needs.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs, Brenda Motley, Teresa Liriano, Diana Valdes, and Angela Santiago, individually and on behalf of the Class, requests that the Court enter judgment in their favor and against Defendants as follows:

a.   An Order certifying the Class as defined herein and appointing Plaintiffs Brenda Motley, Teresa Liriano, Diana Valdes, and Angela Santiago and this Counsel as representatives of the Class;

b.   An award of damages, including nominal and compensatory damages, as allowed by law and in an amount to be determined;

c.   An Order creating a fund for a medical monitoring program in an amount determined to be just and reasonable;

d.   An award of punitive damages as allowed by law and in an amount to be determined;

e.   An award of attorneys' fees, costs and litigation expenses;

f.   An award of prejudgment interest on all amounts awarded;

g.   An Order for injunctive and declaratory relief; and

h.   Such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues.

Dated: August 2, 2024

*Of Counsel:*

John R. Fonda, Esq.
    *(Pro Hac Vice Forthcoming)*
**NAPOLI SHKOLNIK PLLC**
1213 Culbreth Drive
Suite 216
Wilmington NC  28405
Tel. (919) 374-1971
jfonda@napolilaw.com

Paul J. Napoli, Esq.
    *(Pro Hac Vice Forthcoming)*
**NS PR LAW SERVICES LLC**
1302 Avenida Ponce de León
San Juan PR  00907-3982
Tel. (833) 271-4502
pnapoli@nsprlaw.com

Respectfully submitted,

*/s/ Robert Gitelman*
Robert Gitelman  (NJ # 039192004)
**NAPOLI SHKOLNIK PLLC**
400 Broadhollow Road
Suite 305
Melville NY  11747-4810
Tel. (212) 397-1000
rgitelman@napolilaw.com

Christopher M. Placitella (NJ # 027781981)
Michael Cohen (NJ # 024871979)
Eric S. Pasternack (NJ # 015132011)
Jared M. Placitella (NJ # 068272013)
Drew M. Renzi (NJ # 0442262023)
**COHEN, PLACITELLA & ROTH, P.C.**
127 Maple Avenue
Red Bank NJ  07701-1759
Tel. (732) 747-9003
cplacitella@cprlaw.com
mcoren@cprlaw.com
epasternack@cprlaw.com
jmplacitella@cprlaw.com
drenzi@cprlaw.com

*Attorneys for Plaintiffs and the Putative Class*

## DESIGNTION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Robert Gitelman, Esq. of Napoli Shkolnik PLLC, along with co-counsel, Christopher M. Placitella, Esq., Michael Cohen, Esq., Eric S. Pasternack, Esq., Jared M. Placitella, Esq., and Drew M. Renzi, Esq. of Cohen, Placitella & Roth, P.C. are hereby designated as trial counsel for plaintiffs and the putative class in this matter.

## CERTIFICATION

Pursuant to Rule 4:5-1, it is hereby certified that, to the best of my knowledge, there are no other civil actions or arbitration proceedings involving this matter with respect to this matter and no other parties need to be joined at this time. I certify that he foregoing statements made by me are true. I am aware that if any of the foregoing statement made by are willfully false, I am subject to punishment.

Dated: August 2, 2024     Respectfully submitted,

            */s/ Robert Gitelman*
            Robert Gitelman  (NJ # 039192004)
            **NAPOLI SHKOLNIK PLLC**
            400 Broadhollow Road
            Suite 305
            Melville NY  11747-4810
            Tel. (212) 397-1000
            rgitelman@napolilaw.com

            Christopher M. Placitella (NJ # 027781981)
            Michael Cohen (NJ # 024871979)
            Eric S. Pasternack (NJ # 015132011)
            Jared M. Placitella (NJ # 068272013)
            Drew M. Renzi (NJ # 0442262023)
            **COHEN, PLACITELLA & ROTH, P.C.**
            127 Maple Avenue
            Red Bank NJ  07701-1759
            Tel. (732) 747-9003

cplacitella@cprlaw.com
mcoren@cprlaw.com
epasternack@cprlaw.com
jmplacitella@cprlaw.com
drenzi@cprlaw.com

*Attorneys for Plaintiffs and the Putative Class*

# Civil Case Information Statement

## Case Details: UNION | Civil Part Docket# L-002802-24

**Case Caption:** MOTLEY BRENDA VS COSMED GROUP, INC.

**Case Initiation Date:** 08/02/2024

**Attorney Name:** ROBERT GITELMAN

**Firm Name:** NAPOLI SHKOLNIK PLLC

**Address:** 400 BROADHOLLOW RD STE 305 MELVILLE NY 11747

**Phone:** 2123971000

**Name of Party:** PLAINTIFF : MOTLEY, BRENDA

**Name of Defendant's Primary Insurance Company (if known):** Unknown

**Case Type:** TOXIC TORT

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 12 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** YES

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: BRENDA MOTLEY?** NO

**Are sexual abuse claims alleged by: TERESA LIRIANO?** NO

**Are sexual abuse claims alleged by: DIANA VALDES?** NO

**Are sexual abuse claims alleged by: ANGELA SANTIAGO?** NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
    **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
    **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** YES  **Title 59?** NO  **Consumer Fraud?** NO  **Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

08/02/2024                                                      /s/ ROBERT GITELMAN
Dated                                                          Signed